# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

BRANDI L. MILLER,

      Plaintiff,

v.                                                    Case No. 8:22-cv-1224-JRK

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

      Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Brandi L. Miller ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of complex regional pain syndrome, chronic pain syndrome with psychosocial disfunction, thoracic disorder with radiculopathy, thoracolumbar intervertebral disc disorder, lumbosacral intervertebral disc disorder with radiculopathy, spina bifida, scoliosis, lordosis, neuritis, oscillopsia, and

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 11), filed August 26, 2022; Reference Order (Doc. No. 15), entered August 29, 2022.

myasthenia gravis. Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed August 26, 2022, at 102, 116, 379.

On April 10, 2018, Plaintiff protectively filed the DIB application, alleging a disability onset date of March 29, 2018. Tr. at 346-47.[2] The application was denied initially, Tr. at 101-12, 113, 114, 168-70, and upon reconsideration, Tr. at 115-28, 129, 130, 172-77.

On February 11, 2020, an Administrative Law Judge ("ALJ") held a hearing, during which he heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 68-100. At the time of the hearing, Plaintiff was thirty-three (33) years old. Tr. at 73. The ALJ issued a decision on March 31, 2020 finding Plaintiff not disabled through the date of the decision. Tr. at 134-47. Plaintiff requested review by the Appeals Council. Tr. at 305-07. On December 17, 2020, the Appeals Council vacated the decision and remanded the matter to the ALJ for further proceedings. Tr. at 153-57.

On July 13, 2021, the ALJ held another hearing, during which he heard from Plaintiff, who was represented by counsel, and a VE.[3] Tr. at 44-67. At the time of this hearing, Plaintiff was thirty-five (35) years old. Tr. at 49. On

---

[2] The DIB application was actually completed on April 11, 2018. Tr. at 346. The protective filing date is listed elsewhere in the administrative transcript as April 10, 2018. Tr. at 101, 116.

[3] The hearing was held via telephone, with Plaintiff's consent, because of extraordinary circumstances presented by the earlier stages of the COVID-19 pandemic. Tr. at 47-48, 325-40.

2

October 13, 2021, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 16-36.

Thereafter, Plaintiff requested review of the Decision by the Appeals Council and submitted a brief authored by her counsel in support. Tr. at 4-5 (Appeals Council exhibit list and order), 341-43 (request for review), 507-11 (brief). On April 11, 2022, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, making the ALJ's Decision the final decision of the Commissioner. On May 27, 2022, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

Plaintiff on appeal argues two points of alleged error: 1) "[t]he ALJ erred in the assessment of the [residual functional capacity ('RFC')] by failing to properly consider symptoms"; and 2) "[t]he ALJ erred in the assessment of medical opinions." Memorandum of Law (Doc. No. 19; "Pl.'s Mem."), filed November 14, 2022, at 3, 12 (emphasis omitted). On February 7, 2023, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 23; "Def.'s Mem.") addressing Plaintiff's arguments. Then, as permitted, Plaintiff on February 21, 2023 filed a Reply Memorandum (Doc. No. 24; "Reply").

After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's

final decision is due to be reversed and remanded for reconsideration of the medical opinion evidence. On remand, reevaluation of this evidence may impact the Administration's consideration of the remaining issue on appeal. For this reason, the Court need not address the parties' arguments on that issue. See Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II.   The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Regulations, determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

4

also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 19-35. Prior to engaging in the inquiry, the ALJ found that Plaintiff "last met the insured status requirements of the Social Security Act on June 30, 2021" (the date last insured, or "DLI"). Tr. at 19. At step one, the ALJ determined Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of March 29, 2018 through her [DLI] of June 30, 2021." Tr. at 19 (emphasis and citation omitted). At step two, the ALJ found that "[t]hrough the [DLI, Plaintiff] had the following severe impairments: cervical spine disc bulges and herniation without stenosis, lumbar spine disc bulge and scoliosis without stenosis, thoracic spine disc herniation and spondylosis, status post-knee arthroscopy, history of left hip surgery for avascular necrosis, plantar fasciitis and tendonitis in the lower extremities, reflex sympathetic syndrome/complex regional pain syndrome, neurocognitive disorder, somatic disorder, and opioid dependence." Tr. at 19 (emphasis and citation omitted). At step three, the ALJ ascertained that "[t]hrough the [DLI, Plaintiff] did not have an impairment or combination of impairments that met or medically equaled

5

the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 20 (emphasis and citation omitted).

The ALJ determined that through the DLI, Plaintiff had the following RFC:

> [Plaintiff could] perform sedentary work as defined in 20 CFR [§] 404.1567(a), except with no more than occasional climbing, balancing, stooping, kneeling, crouching, and crawling but never climbing ladders, ropes, or scaffolds or at unprotected heights; must avoid extreme vibrations; limited to frequent pushing and pulling with the lower extremities. She was able to understand and carry out routine, repetitive, unskilled tasks; to make basic decisions; and to adjust to simple changes in a work setting, as long as interaction with the public, coworkers, and supervisors was up to frequent.

Tr. at 23 (emphasis omitted). At step four, the ALJ relied on the testimony of the VE and found that "[t]hrough the [DLI, Plaintiff] was unable to perform any past relevant work" as a "secretary," a "registrar, college or university," a "dental assistant," and a "veterinary technician." Tr. at 34 (emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("35 years old . . . on the [DLI]"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the VE's testimony and found that "[t]hrough the [DLI], there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed," Tr. at 34 (emphasis and citation omitted), such as "document specialist," "order clerk," and "call out operator," Tr. at 35. The ALJ concluded Plaintiff "was not under a disability . . . at any time from March 29, 2018, the

6

alleged onset date, through June 30, 2021, the [DLI]." Tr. at 35 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against

the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff argues the ALJ erred in evaluating the opinions of treating physicians Asharf Hanna, M.D. and Stephen Wood, D.O., and the opinion of examining psychologist Michael Eastridge, Ph.D. Pl.'s Mem. at 15-17. Both Drs. Hanna and Wood opined Plaintiff would have excessive absenteeism, but according to Plaintiff, the ALJ rejected the opinions without sufficient and supported reasons. Id. at 15-16. As to Dr. Eastridge, Plaintiff contends the ALJ admitted that the opinion had good support, but nevertheless found it less persuasive than another examining opinion (that of Billie Jo Hatton, Ph.D.) without explaining why. Id. at 16-17. Responding, Defendant argues the ALJ properly considered the treating opinion evidence and found the opinions were unsupported by the doctors' own records. Def.'s Mem. at 7-8. As to the examining opinion at issue, Defendant argues the ALJ rightly found it unpersuasive in light of the lack of mental health treatment evidence in the administrative transcript. Id. at 9.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting

8

the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. § 404.1513(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical condition, including judgments about the nature and severity of [a claimant's] impairments, [a claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3).

An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). [5] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates

---

[5] Plaintiff filed her DIB application after the effective date of section 404.1520c, so the undersigned applies the revised rules and Regulations.

9

[the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

The following factors are relevant in an ALJ's consideration of a medical opinion or a prior administrative medical finding: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. § 404.1520c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. § 404.1520c(b)(3).[6]

---

[6] When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. § 404.1520c(b)(1).

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink, 935 F.3d at 1268); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, each of the treating physicians at issue rendered multiple opinions on Plaintiff's functioning. Dr. Wood, an orthopedic surgeon who has treated Plaintiff for approximately ten years, opined on April 5, 2018 that Plaintiff would need unscheduled breaks, she would miss more than four days of work per month as a result of her impairments or treatments, and her symptoms would frequently interfere with her attention and concentration (among other limitations). Tr. at 943-48. On February 4, 2019, Dr. Wood provided the same opinion on these matters. Tr. at 1038-41. Dr. Hanna, who has treated Plaintiff

11

since approximately 2015 or 2016, provided an opinion on October 16, 2019 that tracks Dr. Wood's opinions on these issues. Tr. at 1159-62. Dr. Hanna repeated the same opinion on June 17, 2021. Tr. at 1750-54. In support, Dr. Hanna wrote that Plaintiff has "[i]ntermittent pain flares, difficult[y] con[cen]trating[, and] drow[s]iness from medication." Tr. at 1754.

At the request of the SSA, Dr. Eastridge evaluated Plaintiff for psychological issues and authored a report dated May 29, 2021. Tr. at 1438-48. Dr. Eastridge noted that Plaintiff was "moving quite a bit during testing, clearly uncomfortable." Tr. at 1441. Interpreting various test results, Dr. Eastridge found that "there is a strong emotional component to the experience of pain and its impact on her." Tr. at 1442. He further found Plaintiff is "credibly describing her experience with regard to medical problems." Tr. at 1442. According to Dr. Eastridge, Plaintiff's "memory and her speed of mental processing are . . . mildly impaired," which "may be due to neurological impairment, but more probably, is due to being distracted due to physical discomfort and possibly due to medication side effects." Tr. at 1442-43. Dr. Eastridge diagnosed major depressive disorder, single episode, moderate, as well as somatic symptom disorder with predominant pain. Tr. at 1443. Among other things, Dr. Eastridge assigned moderate to marked impairment in Plaintiff's ability to understand, remember, and apply information, and marked impairment in Plaintiff's ability to persist and maintain productive pace. Tr. at 1443.

12

The ALJ found unpersuasive Drs. Wood and Hanna's opinions for largely the same reasons. As to both, the ALJ found they were "neither supported by [the doctors'] treatment notes nor consistent with the record available at the time of th[e D]ecision." Tr. at 30-31 (Dr. Wood), 31 (Dr. Hanna). The ALJ then observed that Plaintiff's symptoms improved with conservative treatment, injections, and ketamine infusions, and some providers noted a normal gait without an assistive device. Tr. at 31-32.

As to Dr. Eastridge, the ALJ recognized that his opinion on functioning was "supported by [his] examination findings" but nevertheless found it unpersuasive as "inconsistent with the record available at the time of th[e D]ecision." Tr. at 33. The ALJ relied recognized Plaintiff has "complained of impaired cognition" but noted that "other examiners frequently determined she was cooperative with a normal mood and affect and intact attention, concentration, and cognition." Tr. at 33 (citations omitted). The ALJ also stated that another examining psychologist, Dr. Hatton, found Plaintiff cognition, memory, and attention "only mildly to moderately impaired." Tr. at 33; see Tr. at 858-60 (Dr. Hatton's opinion). Finally, the ALJ stated that "the available record does not include a diagnosis or treatment notes from any mental health providers." Tr. at 33 (citations omitted).

The ALJ's reasons for finding unpersuasive the opinions of treating physicians Dr. Wood and Hanna are not adequate and supported. To begin, the

13

doctors were consistent in their opinions, but the ALJ did not analyze the consistency factor as required. The doctors' opinions also appear to be consistent with a Functional Capacity Evaluation in the administrative transcript that is difficult to read but indicates Plaintiff would need unscheduled breaks during the day. See Tr. at 1187. Moreover, to the extent the ALJ relied on some providers noting Plaintiff's normal gait, there are many others noting difficulty walking and/or the use of an assistive device. See, e.g., Tr. at 555 (noting ambulation with a cane), 1115 ("difficulty walking"), 1122 ("She uses a cane in order to ambulate."), 1354 (reflecting use of walker for short ambulation). In any event, Drs. Wood and Hanna did not rely heavily on Plaintiff's gait for their opinions, instead focusing on her pain which no doubt has various complexities.

The ALJ's finding that Plaintiff's symptoms improved with conservative treatment is partially accurate. The relevant record reflects a myriad of medications, surgical interventions, injections, and infusions. Sometimes the medications and infusions helped relatively significantly, and often they helped marginally or not at all. See Tr. at 555-707, 1454-1634. And, the ketamine injections did not come without issue. Plaintiff had to have a port placed in January 2020 to continue her "chronic ketamine injections." Tr. at 1334; see Tr. at 55. In September 2020, Plaintiff presented to the Emergency Room after suffering a fall because of dizziness following a ketamine injection. Tr. at 1380. Plaintiff testified she does "one to two days" a month of infusions but her

medications continue to be adjusted because her "pain levels are high right now." Tr. at 54.

In light of the foregoing, the matter must be reversed and remanded for reconsideration of Drs. Wood and Hanna's opinions.

As to the ALJ's analysis of Dr. Eastridge's opinion, it reflects a potential misunderstanding of the basis of the opinion. The ALJ relied in part on no mental health treatment records in finding that the opinion was unpersuasive, Tr. at 33, but Dr. Eastridge made clear that he believes Plaintiff's memory and mental processing difficulties are likely due to Plaintiff's physical discomfort and/or medication side effects, Tr. at 1442-43. Accordingly, the lack of mental health treatment in the record cannot be a sound basis upon which to find Dr. Eastridge's opinion unpersuasive. Moreover, this aspect of the opinion again appears consistent with Drs. Wood and Hanna about the difficulty concentrating. On remand, the ALJ shall reconsider Dr. Eastridge's opinion as well.

## V. Conclusion

After due consideration, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

15

(A) Reconsider the opinions of Drs. Wood, Hanna, and Eastridge in accordance with the applicable Regulations and authority;

(B) If appropriate, address Plaintiff's other argument in this appeal; and

(C) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 28, 2023.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record

16